*E-FILED - 7/3/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PATTERSON ) | No. C 06-1429 RMW (PR) |
| ) | |
| Petitioner, ) | ORDER GRANTING |
| ) | PETITIONER'S REQUEST TO |
| vs. ) | FILE SUPPLEMENTAL |
| ) | AUTHORITIES; DENYING |
| BEN CURRY, Warden ) | PETITION FOR WRIT OF |
| ) | HABEAS CORPUS |
| Respondent. ) | |
| ) | (Docket No. 14) |

    Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison Terms's ("Board") decision denying him parole. The court dismissed two of petitioner's claims as not cognizable under § 2254 and ordered respondent[1] to show cause why the petition should not be granted as to the remaining claim. Respondent filed an answer addressing the merits of the petition and petitioner has filed a traverse. Petitioner also filed a request to file a citation of supplemental authorities. The court GRANTS petitioner's request (docket no. 14). After reviewing the briefs and underlying record, the court concludes that

---

[1] The proper named respondent in this action is Ben Curry, the acting Warden at the Correctional Training Facility in Soledad, where petitioner is incarcerated. <u>Stanley v. Cal. Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper respondent); Rule 2(a), 28 U.S.C. § 2254. Accordingly, the clerk shall terminate A.P. KANE and substitute BEN CURRY as the proper respondent.

petitioner is not entitled to habeas relief based on the claims presented and denies the petition.

## I.  BACKGROUND[2]

In 1980, petitioner was twenty-years-old and on probation for burglarizing two restaurants.  On approximately May 18, 1980, petitioner and two other individuals broke into 80-year-old victim, Jacob Cookis's, home.  Once inside, petitioner climbed on top of Cookis's back and held him down.  When Cookis started yelling and struggling, petitioner hit Cookis on the side of his head.  The other defendants ransacked the bedroom and looted the front room of the house.  At the time the three men left the house with three hundred dollars, Cookis was no longer screaming or moving.  The victim was found dead a day or two later by Cookis's sister.

On December 20, 1984, petitioner was convicted of first degree murder (Cal. Penal Code § 187) and was sentenced to twenty-five years-to-life in state prison.  Prior to his August 2004 parole suitability hearing, petitioner appeared before the Board on four separate occasions and was denied parole each time.  During his last suitability hearing, petitioner had been incarcerated for approximately twenty-five years.

Petitioner testified at his August 2004 parole hearing.  He chose not to discuss the commitment offense with the Board.  At the hearing, evidence was presented that petitioner had a place to stay, family members who were going to support him and job prospects in Hemet, California upon his release.  Additionally, petitioner completed the Family Effective Awareness program and received a certificate of completion for this achievement.[3]  However, the Board also determined that petitioner's offense was carried out in a cruel, callous and dispassionate manner.

After the Board denied parole, petitioner filed a habeas petition in the state superior court, which was denied on March 21, 2005.  He then filed a state habeas petition in the state appellate court, which was summarily denied on July 27, 2005.  Petitioner then filed a state habeas petition in the state supreme court, which was summarily denied on October 12, 2005.  Petitioner filed the instant federal petition on January 4, 2006 in the United States District Court for the Central

---

[2] The relevant facts are taken from the Transcript of the August 3, 2004 Subsequent Parole Consideration Hearing, Resp. Ex. D at 14-28.

[3] Resp. Ex. D at 22-24, 50-52.

District of California. The petition was transferred to this court on February 24, 2006.

## II. DISCUSSION

### A.  Standard of Review

This court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss

1   of error fails to give proper deference to state courts by conflating error (even clear error) with
2   unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

3         A federal habeas court may grant the writ if it concludes that the state court's adjudication
4   of the claim "results in a decision that was based on an unreasonable determination of the facts in
5   light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2).  The
6   court must presume correct any determination of a factual issue made by a state court unless the
7   petitioner rebuts the presumption of correctness by clear and convincing evidence. 28. U.S.C. §
8   2254(e)(1).

9         Where, as here, the highest state court to consider the petitioner's claims issued a
10  summary opinion which does not explain the rationale of its decision, federal review under §
11  2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S.
12  797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this
13  case, the last state court opinion to address the merits of petitioner's claim is the opinion of the
14  Los Angeles Superior Court.

15  **B.     Subject Matter Jurisdiction**

16        Respondent initially contends that this court lacks subject matter jurisdiction over the
17  instant petition because California inmates have no federally-protected due process right in
18  parole release. Resp. Mem. at 3, ¶ 7. Respondent acknowledges the Ninth Circuit's decision in
19  Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), but preserves this
20  argument because a petition for rehearing was pending at the time respondent filed the answer in
21  the instant case. Id.

22        Although a convicted person has no inherent or constitutional right to early release on
23  parole, a state's statutory parole scheme may create "a presumption that parole release will be
24  granted" if it uses mandatory language. Greenholtz v. Inmates of Nebraska Penal & Corr.
25  Complex, 442 U.S. 1, 12 (1979). The Ninth Circuit made clear in Sass that because California's
26  parole statute uses mandatory language, "California inmates continue to have a liberty interest in
27  parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass, 461 F.3d at 1125 (finding that
28  district court misread Dannenberg which did not hold that there is no constitutionally protected

1  liberty interest in parole – but upholding denial of petition on other grounds).  Because
2  controlling Ninth Circuit authority holds that petitioner has a constitutionally protected liberty
3  interest in release on parole, this court has subject matter jurisdiction pursuant to 28 U.S.C. §
4  2254 to decide whether petitioner's federal constitutional rights were violated by the Board's
5  determination that petitioner was not suitable for parole.

**C.  Petitioner's Claim**

Petitioner asserts that his right to due process under the Fourteenth Amendment was violated by the Board's decision denying him parole because there is no evidence to support its finding that he is unsuitable for parole.  Petition, Mem. of Points and Authorities at 1.  Petitioner maintains that the Board's denial of parole was premised on "commitment offense" criteria which are not within the scope of the Board's regulatory authority.  Petitioner further asserts that the Board ignored his positive rehabilitation demonstrated by his full participation in self-help programming, psychological reports stating that he has no mental illnesses, nor alcohol and drug problems, and he does not have a significant violent history, which violated his right to due process.  Id. at 1-2.

Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process.  McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process.  Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).  The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.  Hill, 472 U.S. at 455.  An examination of the entire record is not required, neither is an independent assessment of the credibility of witnesses nor weighing of the evidence.  Id.  The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board.  Id.  Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision."  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion v. Duncan, 306

1  F.3d at 904.

2  California law allows the Board to consider many factors when determining parole eligibility, including whether "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for [the] individual.'" <u>Biggs v. Terhune</u>, 334 F.3d 910, 915 (9th Cir. 2003) (quoting Cal. Penal Code § 3041(b)).  The Board may also "consider all relevant information including potential threats to public safety, whether the offense was carried out in a manner which demonstrates exceptionally callous disregard for human life, and whether the [petitioner] engaged in misconduct while in jail." <u>Id.</u> (citing Determination of Suitability, Title 15 Cal. Code of Regs. § 2402(c)(6)).  The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b).  Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole.  Cal. Code of Regs., tit. 15, § 2402(c)-(d).[4]

California law makes clear that the "'findings that are necessary to deem a prisoner unsuitable for parole,' are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety." <u>Hayward v. Marshall</u>, 512 F.3d 536, 543 (9th Cir. 2008)(citations omitted).  Accordingly, the test is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety.  "Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." <u>Id.</u> (citations omitted) (concluding that factual findings relied upon by

---

[4] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct.  Cal. Code of Regs., tit. 15, § 2402(c).  The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law.  Cal. Code of Regs., tit. 15, § 2402(d).

governor had no evidentiary support in the record to support a determination that petitioner's release would unreasonably endanger public safety and therefore Governor's reversal denied petitioner due process).

In petitioner's case, the Board conducted a hearing and concluded that petitioner posed "an unreasonable risk of danger to society or a threat to public safety if released from prison." Resp. Ex. D at 47. The Board found Petitioner unsuitable for parole because the offense was "carried out in a very cruel and a very callous manner." Id. The Board stated that "[t]he offense was carried out in a manner which demonstrates a total disregard for human suffering especially given the age of the victim. And the motive for the crime was very trivial in relation to the offense." Id. Additionally, the Board found that petitioner demonstrated an increasing pattern of criminality, and that he had failed to benefit from previous attempts at rehabilitation. Id. at 48-49. At the time of the murder, petitioner was on probation from multiple burglaries and had two juvenile arrests. Id. The Board found that petitioner's involvement in self-help was limited. Although petitioner had participated in a Family Effective Awareness program in 2004, the Board noted that this was his first documented self help program since 1997. Id. at 22.

In California, the nature of the prisoner's commitment offense alone can constitute a sufficient basis for denying parole if the offense is more aggravated or violent than the minimum necessary to sustain a conviction for first degree murder. In re Rosenkrantz, 29 Cal. 4th 616, 667, 682-83 (2002). In its order denying petitioner's habeas petition, the Los Angeles Superior Court independently reviewed the record, giving deference to the broad discretion of the Board in denying parole. Resp. Ex. E (In re David Patterson, Order Re: Writ of Habeas Corpus, Los Angeles Superior Court, case no. BH003077 (March 21, 2005)) at 1. The superior court agreed with petitioner that the Board improperly relied upon his correctional counselor's assessment of the risk that petitioner poses to the free community. Additionally, the court found that there was no evidence that petitioner's parole plans were unrealistic. Id. at 2.

However, the superior court concluded that "there is "some evidence" to support the Board's finding that petitioner was unsuitable for parole. The court referred to the underlying record, noting that "petitioner and two crime partners entered the home of an eighty-year old

victim in order to commit a burglary. Once inside petitioner climbed on the victim's back and held him down while a crime partner tied the victim's feet together. Petitioner continued holding the victim down while his crime partners ransacked the house. At some point the victim began struggling and yelling, and petitioner struck him on the head with his fist. When the three left the residence the victim was no longer screaming or moving." Id. at 1-2 (footnote omitted). The superior court also noted the Board's decision reflected that the victim had been gagged and asphyxiated with a pillow. Id. at 2, fn. 2.

The superior court found that the Board properly characterized the commitment offense as dispassionate, demonstrated a callous disregard for human suffering, and that the victim was abused." Id. The superior court also recognized that petitioner's participation in self-help programming was limited.[5] Id. The superior court rejected petitioner's argument that the Board improperly relied upon the Deputy District Attorney's opposition to parole, because the prosecutor has a right to be present at the hearing to represent the interests of the people pursuant to Penal Code § 3041.7. Id. at 2-3. The superior court observed that the "Board merely noted the Deputy District Attorney's opposition but did not cite it as a reason for finding petitioner unsuitable." Id. at 3. Therefore, the superior court concluded that "the record contains 'some evidence' to support the Board's finding that petitioner is unsuitable for parole." Id. at 1.

In the instant case, petitioner filed a request to file a citation of supplemental authorities in support of his petition, citing to Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008) and Ryman v. Sears, Roebuck and Co., 505 F.3d 993, 994 (9th Cir. 2007). Petitioner asserts that the supplemental authorities are on point and relevant to the instant case.

In Hayward, the Ninth Circuit reversed a district court's habeas denial, upon finding a due process violation based on the governor's reliance on the "unchanging factor" of the gravity of the commitment offense to reverse the Board's grant of parole. Hayward, 512 F.3d at 547. The Board had granted parole at the petitioner's eleventh parole suitability hearing after he had served twenty-seven years of a fifteen years-to-life sentence for second degree murder. Id. The Ninth

---

[5]At the time of the parole hearing, Petitioner had only completed one self-help program.

Circuit found that the governor's reversal of the Board's decision was not supported by any evidence that the petitioner's release would threaten public safety. Id.

In petitioner's case, the Board relied on more than the "unchanging factor" of his commitment offense and criminal history in denying him parole. Although the "cruel and callous" nature of petitioner's commitment offense and his criminal history weighed heavily in the Board's determination, his failure to participate in ongoing self help programming, as well as the district attorney's opposition also counseled against parole. Resp. Ex. D at 47-52. Although the superior court found that the Board improperly relied upon his correctional counselor's assessment of petitioner's risk to the free community and that there was no evidence that petitioner's parole plans were unrealistic, the court concluded that "there is "some evidence" to support the Board's finding that petitioner was unsuitable for parole. Resp. Ex. E at 1-2.

Petitioner cites to Ryman v. Sears, Roebuck and Co., for the proposition that ". . .we reiterate the rule that when (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it. Ryman, 505 F.3d at 994. In Ryman, the Ninth Circuit addressed an alleged violation of the Oregon Family Leave Act (OFLA), where plaintiff claimed that his employer penalized him for his protected family leave absence. Id. at 994-95. The court finds that Ryman is not controlling authority on the application of state law in petitioner's case, because here the highly deferential standard of the AEPDA under § 2254 is applied. Nonetheless, the highest state court to consider the petitioner's claims issued a summary opinion which does not explain the rationale of its decision, therefore federal review under § 2254(d) is of the last state court opinion to reach the merits, the Los Angeles Superior Court's decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).

Based upon its review of the underlying record, this court concludes that the Board's findings were supported by "some evidence." The Board based its decision in part on

petitioner's minimal participation in beneficial self-help programing.  Thus, the Board did not focus solely on the severity of the commitment offense in denying petitioner parole. Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on a unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1),(2).

### III.  CONCLUSION

The court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying parole proceedings.  Accordingly, the petition for a writ of habeas corpus is denied.  The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 7/1/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge